United States District Court

For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   NANCY FERGUSON, individually and as          No. C 03-05632 SI
    trustee of the FERGUSON FAMILY
9   TRUST, and on behalf of her subrogee,        **ORDER RE: MOTIONS FOR SUMMARY**
                                                 **JUDGMENT**
10              Plaintiff,

11       v.

12  ARCATA REDWOOD COMPANY, LLC.,
    et al.,
13
                Defendants.
14  _____/

15       On July 29, 2005, the Court heard argument on defendants' motions for summary judgment.

16  Having carefully considered the arguments of counsel and the papers submitted, the Court GRANTS

17  Simonson's motion for summary judgment; DENIES Quebecor's motion for summary judgment;

18  GRANTS ARC-LLC's motion for summary judgment against plaintiff's claims; DENIES ARC-LLC's

19  motion for summary judgment on its cross-claims against Quebecor; and DISMISSES plaintiff's Second

20  and Third Causes of Action with respect to all defendants.

21

22                              **BACKGROUND**

23       Plaintiff Nancy Ferguson filed suit on December 15, 2003, against twenty-one defendants, under

24  the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.

25  § 9601 *et seq.*, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6930, and related

26  state laws, seeking contribution for costs of investigation and clean up of the soil and groundwater

27  contamination at and emanating from a property located at 100 Timbers Boulevard, Smith River,

28

California ("the Property").[1]

The Property was purchased by Simonson Lumber Company on May 11, 1973. See Brown Decl., Ex. 1. The Property was a small portion of the company's holdings in the area, which included timberland, lumber mills and other facilities. In June 1979, Arcata Corporation[2] purchased all shares of stock for Simonson Lumber Company and took possession of the Property. On April 15, 1988, Arcata Corporation entered into a Lease/Option Agreement for the Property with XL Enterprises, which provided XL Enterprises with the option to purchase the property within six months. See Brown Decl., Ex. 2.

On June 29, 1988, Arcata Corporation sold certain assets, including the Property, to Simpson Acquiring Company.[3] See Brown Decl., Ex. 3. Approximately two weeks later, XL Enterprises informed Simpson Acquiring Company that it was exercising its option to purchase the property. Title passed to XL Enterprises on August 3, 1988. See Brown Decl., Ex. 1.

Plaintiff purchased the Property from XL Enterprises in 1993. In 1998, plaintiff attempted to sell the Property to the Del Norte Housing Development Corporation. As a result, an environmental site assessment was conducted on the Property, which uncovered a disposal pit. The pit contained waste disposal that included scrap metal and pipes, as well as contamination from hydrocarbons, wood treatment products, PCB and PCP.

Plaintiff contends that she was not responsible for the contamination and seeks compensation from previous owners and operators of the Property. Specifically, plaintiff claims that she is entitled to a judgment against all defendants for, among other things, contribution and indemnity for all response costs incurred by plaintiff, compensatory and general damages resulting from the presence of soil and groundwater contamination at and emanating from the Property, and for injunctive and declaratory relief.

---

[1] Claims One through Three are claims under CERCLA and for violations of RCRA. The remaining substantive claims, all based on California law, are: contribution under the California Hazardous Substance Accountability Act ("CHSAA"); public nuisance; and private nuisance. Plaintiff also includes claims for equitable indemnity and declaratory relief.

[2] Arcata Corporation is a predecessor of Quebecor World Arcata Corporation (Quebecor).

[3] Simpson Acquiring Company is a predecessor of Arcata Redwood Company LLC.

United States District Court

For the Northern District of California

1    On August 27, 2004, plaintiff filed her Second Amended Complaint.  Defendant Arcata

2  Redwood Company, LLC (ARC-LLC) moved to dismiss the second amended complaint, and on

3  November 12, 2004, the Court dismissed plaintiff's CERCLA, RCRA and California Health & Safety

4  Code claims against ARC-LLC.  However, the Court upheld plaintiff's public nuisance, private

5  nuisance, equitable indemnity and declaratory relief claims against that defendant.

6    Currently before the Court are various motions for summary judgment: 1)  Leland Simonson's

7  motion on plaintiff's claims; 2) Quebecor's motion on plaintiff's claims; 3) ARC-LLC's motion on

8  plaintiff's remaining state law claims; and 4) ARC-LLC's motion on its cross-claims against Quebecor.

9   Plaintiff has not opposed Quebecor's motion to dismiss the RCRA claims.  Additionally, plaintiff has

10  submitted a "request for dismissal of RCRA claims" dated July 8, 2005.  Therefore, the Court will

11  DISMISS plaintiff's Second and Third Causes of Action, which consist of RCRA claims brought against

12  all defendants.

13

14    **LEGAL STANDARD**

15    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

16  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

17  material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

18  56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of

19  material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party, however, has

20  no burden to negate or disprove matters on which the non-moving party will have the burden of proof

21  at trial.  The moving party need only point out to the Court that there is an absence of evidence to

22  support the non-moving party's case.  See id. at 325.

23    The burden then shifts to the non-moving party to "designate 'specific facts showing that there

24  is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-

25  moving party must "do more than simply show that there is some metaphysical doubt as to the material

26  facts."  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The

27  mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the

28  jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

**United States District Court**

For the Northern District of California

3

252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

## DISCUSSION

### 1.     Leland Simonson's motion for summary judgment

Leland Simonson, along with his father, became the sole shareholders of Simonson Lumber Company in the 1950's.  Weinstein-Hamilton Decl., Ex. 1 at 11.[4]  Simonson was the president and manager of the company, and his wife was the secretary.  Id.; Supp. Valinoti Decl., Ex. 2 at 51. The holdings of Simonson Lumber Company included the Property at issue in this litigation.  In June 1979, Arcata Corporation purchased all of the shares of stock of Simonson Lumber Company.  Plaintiff has filed a claim against Leland Simonson as an individual.  SAC at ¶17.  Although plaintiff also filed suit against Simonson Lumber Company, those claims were voluntarily dismissed on March 8, 2005. [Docket #67]

Simonson argues that summary judgment is appropriate because plaintiff has failed to present any evidence that he was the owner or operator of the Property at the time of disposal of any hazardous substance.  He argues that the activities that led to the contamination found in the disposal pit occurred after he sold his interest in the Property in June 1979.

Under 42 U.S.C. § 9607(a)(2), liability under CERCLA can be attached to "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  Plaintiff argues that Simonson  was an operator at the time hazardous substances were disposed and that he is liable as a "generator" of hazardous waste.

---

[4] Unless otherwise noted, the citations to declarations refer to the declaration submitted for the motion currently under discussion.

United States District Court

For the Northern District of California

The Court finds that Simonson cannot be held liable as an "owner or operator" under CERCLA because plaintiff has failed to present any evidence that hazardous substances were disposed of on the Property at issue during Simonson Lumber Company's ownership of the Property. The basis for plaintiff's complaint is the contamination found in the disposal pit, which contained various hazardous materials including parts from the dismantled power plants. Plaintiff presents no evidence that these materials were disposed of before June 1979, when the Simonson family sold its holdings in the Simonson Lumber Company to Arcata Corporation. To the contrary, the evidence presented suggests that the hazardous materials on the Property were disposed after June 1979.

During Simonson Lumber Company's ownership of the Property, it was used to store and dry lumber and there is testimony that no chemically treated lumber was ever stored or dried on the Property. Valinoti Decl., Ex. 4 (Schmelke Depo.) at 27, 78. During the 1970's, an electrical power plant was operated on land across Highway 101 from the Property. It was dismantled sometime after 1978, and the plaintiff's complaint alleges that parts of it were dumped into the disposal pit on the Property. SAC ¶¶ 31, 33, 35. However, plaintiff agreed in response to Simonson's requests for admissions that Simonson was not involved in the dismantling of the power plant. Valinoti Decl., Ex. 2 at 14-16. Additionally, Simonson presented evidence that the company never dug any holes in the ground to discard waste. Schmelke Depo. at 81.

Plaintiff does not argue that the power plant was dismantled or that the disposal pit was dug during Simonson Lumber Company's ownership of the Property. Instead, plaintiff alleges that summary judgment is not appropriate because the company released hazardous waste in other forms on the Property. The evidence submitted by plaintiff does not pertain to the Property at issue in this litigation. Instead, plaintiff presents evidence regarding hazardous waste releases in other areas of the surrounding property owned by the company. Specifically, plaintiff presents evidence of a wood treatment chemical spill at the lumber mill that resulted in governmental action. See Weinstein-Hamilton Decl., Ex. 5.

However, plaintiff presents no evidence explaining how the release of hazardous waste in other areas owned by the company impacted the Property at issue in this case. Although plaintiff presents a large amount of argument on this issue, argument is not sufficient at the summary judgment stage of the proceedings, as plaintiff must produce evidence in support. Plaintiff also makes unsupported assertions

that "the site was significantly contaminated with hazardous waste" at the time of Simonson Lumber Company's sale of stock to Arcata Corporation.  Opp'n at 8.

Therefore, the Court finds that Simonson is entitled to summary judgment on plaintiff's claim that he was an "owner or operator" under 42 U.S.C. § 9607(a)(2) because plaintiff has presented no evidence that Simonson, or the Simonson Lumber Company, was involved in the discharge of hazardous materials on the Property at issue in this litigation.

Plaintiff argues that Simonson also qualifies as a "generator" of hazardous substances under 42 U.S.C. § 9607(a).  Plaintiff argues that Simonson can be liable under CERCLA because he allowed his company to release hazardous materials that were later collected by future owners of the property and placed in the disposal pit.

The Court rejects plaintiff's argument because it entirely lacks factual support.  See Opp'n at 11-13 (containing assertions such as: "the site was very contaminated"; "there were numerous . . . containers that used to contain hazardous wood treatment chemicals . . . left around the site"; and "[t]here is no question that . . . wood treatment chemicals used and released during his ownership and operation of Simonson Lumber Company's lumber mill found their way into this disposal pit.")  Plaintiff has presented no evidence that any of the material found in the disposal pit originated with Simonson Lumber Company.

Therefore, the Court finds that defendant Simonson is entitled to judgment as a matter of law for plaintiff's CERCLA claim and GRANTS defendant's motion for summary judgment.

## 2.    Quebecor's motion for summary judgment

Quebecor World Arcata Corporation brings a motion for summary judgment on plaintiff's CERCLA claim, asserting that plaintiff has not presented any evidence establishing that plaintiff has been sued under CERCLA or entered into a settlement, as defined by CERCLA.  Additionally, Quebecor asks the Court to dismiss plaintiff's state law claims by declining to grant supplemental jurisdiction.

### A.    42 U.S.C. § 9613

In her First Cause of Action, plaintiff asserts that she is "entitled to contribution from Defendants

6

**United States District Court**

For the Northern District of California

1
2
3
4
5
6

. . . for all past and future response costs incurred by Plaintiff due to the releases and threatened releases of hazardous substances emanating from the Property" pursuant to 42 U.S.C. § 9613(f).  Under 42 U.S.C. § 9613, plaintiff may pursue a claim for contribution if it arises 1) during or following a civil action under Section 106 or 107 of CERCLA, 42 U.S.C. § 9613(f)(1); or 2) after an administrative or judicially approved settlement, 42 U.S.C. § 9613(f)(3)(B).  See Cooper Industries, Inc. v. Aviall Services, Inc., 125 S.Ct. 577, 584 (2004).

7
8
9
10

Plaintiff concedes that she has not been subject to a lawsuit under CERCLA § 106 or § 107.  See Opp'n at 2.  Plaintiff does assert that she can bring a claim under 42 U.S.C. § 9613 because the claim follows "an administrative or judicially approved settlement."  Plaintiff argues that her interactions with California and federal agencies constituted a settlement for purposes of CERCLA.

11
12
13
14
15
16
17
18
19
20

The documents submitted by plaintiff do not demonstrate that plaintiff entered into a settlement under 42 U.S.C. § 9613(f)(3)(B).  See Weinstein-Hamilton Decl., Exs. 3-12. The documents are letters exchanged between the parties during the clean-up efforts.  None of the documents contain the word "settlement" or "CERCLA".  See Pharmacia Corp. v. Clayton Chemical Acquisition LLC, 2005 WL 615755 * 7 (S.D. Ill.) (holding that Administrative Order by Consent reached between plaintiff and EPA was not a settlement for purposes of CERCLA section 113, in part because the document did not contain the word "settlement").  Although the California Regional Water Quality Control Board (CRWQCB) warned plaintiff that "[f]ailure to comply with this request in a timely manner may result in elevated enforcement," no other document references any threatened legal or administrative proceeding. Weinstein-Hamilton Decl., Ex. 3.

21
22
23
24
25
26

W.R. Grace & Co. v. Zotos International, Inc., the case relied upon by plaintiff, supports Quebecor's position on this issue.  2005 WL 1076117 (W.D.N.Y.).  In that case, plaintiff entered into an Administrative Order on Consent with the New York State Department of Environmental Conservation.  The Order made no reference to CERCLA, nor did it "state that the DEC was exercising any authority under CERCLA."  Id. at * 7.  The court in found that plaintiff did not have a claim under section 113(f)(3) because it had not settled CERCLA liability prior to filing its complaint.  Id.

27
28

In the current case, the EPA never entered into any agreement with plaintiff and the CRWQCB never asserted that it was exercising authority under CERCLA.  Finally, the only statement related to

a resolution of this situation was made by CRWQCB, which stated that "this agency finds that no further action on this site is required." Weinstein-Hamilton Decl., Ex. 12. This does not constitute a settlement agreement by the two parties, nor did the EPA endorse the statement.

Therefore, the Court finds that plaintiff cannot maintain a contribution cause of action under CERCLA § 113 because the action does not follow an administrative or judicially approved settlement.

**B.    42 U.S.C. § 9607**

Plaintiff asserts that summary judgment for her First Cause of Action under CERCLA is not appropriate because there remains a claim for contribution under Section 107. 42 U.S.C. § 9607. Quebecor argues that plaintiff makes no reference to a contribution claim under Section 107 in her complaint, and that even if the complaint includes such a provision, plaintiff has failed to state a valid claim.

Although the Second Amended Complaint is far from a model of clarity, the Court finds that it sufficiently states a cause of action for contribution under Section 107. The First Cause of Action states that it is for "Contribution Under CERCLA." Plaintiff's assertion that she pled a cause of action under Section 107 based on paragraph 49 of her complaint is incorrect. The section is referenced in that paragraph not as a basis for recovery; instead, the section establishes liability for defendants on all claims under CERCLA. However, by stating that the claim is for "contribution" plaintiff has sufficiently placed the parties on notice of a contribution action under Section 107 or Section 113.

Relying on Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298 (9th Cir. 1997), Quebecor argues that plaintiff cannot bring a claim under Section 107 because she is a "Potentially Responsible Party" (PRP) under CERCLA.    Plaintiff does not dispute that, as the owner of the property, she is a PRP under 42 U.S.C. § 9607. She does dispute, however, that Pinal Creek is as broad as Quebecor contends; and the Court agrees.

Pinal Creek does hold that a PRP cannot bring a claim for joint and several liability under Section 107. 118 F.3d at 1302. However, the Ninth Circuit also recognized a PRP's right to bring a contribution claim under Section 107. Id. at 1301 ("a claim for contribution . . . is imbedded in the text of § 107"). The Ninth Circuit has since reaffirmed the holding of Pinal Creek. See Western Properties

8

1    Service Corp. v. Shell Oil Company, 358 F.3d 678, 685 (9th Cir. 2004).  The Supreme Court's decision

2    in Cooper Industries does not impact plaintiff's Section 107 claim, since the Supreme Court declined

3    to address that issue.  125 S.Ct. at 586 n. 6 (stating "we do not address whether a § 107 cost recovery

4    action . . . may seek some form of liability other than joint and several").[5]

5         Therefore, the Court DENIES Quebecor's motion for summary judgment for the First Cause of

6    Action, provided that plaintiff seeks only contribution under Section 107.[6]

7

8    **3.     ARC-LLC's motion for summary judgment on plaintiff's claims**

9         ARC-LLC held title to the Property for 35 days, from June 30, 1988 to August 3, 1988.  During

10   that period, the Property was leased to XL Enterprises.[7]  Plaintiff brings claims against ARC-LLC for

11   nuisance, equitable indemnity and declaratory relief based on its brief ownership of the Property.

12        Plaintiff does not allege that ARC-LLC engaged in any operations or disposed of hazardous

13   materials on the Property.  In fact, XL Enterprises leased the property during ARC-LLC's ownership.

14   Therefore, plaintiff must establish that ARC-LLC is liable as property owner and landlord for nuisance.

15   "A landlord cannot be held to be responsible for all damages inherent even in a dangerous business.  The

16   defendant must be aware of the specific dangerous condition and be able to do something about it before

17   liability will attach."  Resolution Trust Corp. v. Rossmoor Corp., 34 Cal.App.4th 93, 102 (1995).

18        Plaintiff argues that ARC-LLC is liable under Hendler v. United States, 38 Fed.Cl. 611 (Fed. Cl.

19   1997).  However, the landowner in Hendler "was made aware . . . of the environmental problems."  Id.

20   at 616-617.   Plaintiff has presented no evidence that ARC-LLC was aware of the disposal pit that

21

22        [5] Since the Court's decision in Cooper Industries, district courts in this circuit have held that
     a PRP can bring a contribution claim under Section 107.  See Kotrous v. Goss-Jewett Company of
23   Northern California, Inc., 2005 WL 1417152 (E.D. Cal. 6/16/05); Adobe Lumber, Inc. v. Taecker,
     2005 WL 1367065 (E.D.Cal. 5/24/05).  Quebecor, in its August 2, 2005 letter, provides only case
24   law from other circuits.

25        [6] Quebecor's motion for summary judgment on plaintiff's state law claims relies upon the
     Court's dismissal of all federal claims.  Given that the Court has denied the motion for summary
26   judgment on plaintiff's CERCLA claim, the Court DENIES Quebecor's motion for summary
     judgment with respect to the state law claims.
27

28        [7] Plaintiff was affiliated with XL Enterprises and provided a $50,000 loan that allowed XL
     Enterprises to purchase the Property in 1988.  See Brown Decl., Ex. 11.

**United States District Court**

For the Northern District of California

contained PCB contamination.  In fact, the pit was not discovered until ten years later, in 1998.

Plaintiff argues that ARC-LLC had a reason to know that the Property was contaminated. Plaintiff first argues that lumber mills generally are contaminated; therefore, ARC-LLC should have conducted an investigation of the land.  However, plaintiff presents no authority in support of her position and the Court finds that it is not persuasive.

Plaintiff submits three documents in support of her argument.  See Weinstein-Hamilton Decl., Exs. 1-3. However, these documents do not relate to the Property at issue.  Exhibit 1 references the truck shop location at the mill property, which was on the other side of Highway 101.  See Supp. Green Decl., Ex. 1 (Heckenberg Depo.) at 85-87.  Exhibit 2 is an memorandum from an employee of the California Regional Water Quality Control Board stating that the power plant on the mill property is "entirely shut down."  It makes no reference to any hazardous materials. Exhibit 3 is a letter dated 1989 from the CRWQCB.  This letter post-dates ARC-LLC's sale of the Property by nearly a year and does not involve the disposal pit on the Property.   Additionally, when ARC-LLC purchased the property, Arcata Corporation stated that it had no knowledge of any material and adverse environmental conditions on any of the transferred assets, including the Property.  Brown Decl., Ex. 3 at 27-28.

Therefore, plaintiff has not presented any evidence that ARC-LLC knew or should have known that the Property was contaminated.  Because plaintiff has failed to present any evidence in support of its nuisance claim, the Court GRANTS summary judgment for ARC-LLC.  As plaintiff's remaining claims against ARC-LLC depend upon the nuisance claim, the Court GRANTS summary judgment for ARC-LLC with respect to all remaining claims.

**4.      ARC-LLC's motion for summary judgment on cross-claims against Quebecor**

ARC-LLC filed a cross claim against Quebecor asserting claims of contractual and equitable indemnity.  ARC-LLC now moves for summary judgment on these claims.  ARC-LLC entered into an Asset Purchase Agreement (APA) with Quebecor on June 29, 1988.[8]  See Brown Decl., Ex. 3.   The

---

[8] The APA was actually entered into by predecessors to ARC-LLC and Quebecor; however, given that this fact is not in dispute the Court will refer to the parties by their current names.

APA transferred Quebecor's interest in the Property to ARC-LLC.  The APA also stated that Quebecor "has no actual knowledge of any material and adverse environmental conditions affecting the . . . Assets, including without limitation any unlawful use, treatment, storage or disposal (on site or off site) of any hazardous substances."  Id. at 27-28.

ARC-LLC initially asserted that it had a claim for contractual indemnity under paragraph 5.1 of the APA, which provided for "general cross indemnity."  Under this section of the agreement, a claim for indemnity must be brought within two years of the closing, which occurred in 1988.  Given that the current cross-claims were not brought within two years of the closing, ARC-LLC may not assert a claim for contractual indemnity under paragraph 5.1.

However, ARC-LLC argues in its reply that it is entitled to equitable indemnity and that this claim, without any time bar, is preserved by paragraph 5.4 of the APA.  Id. at 32.  Paragraph 5.4 states that "the parties shall have and retain all statutory, regulatory and common law rights of indemnity, contribution or other recourse against each other with respect to 'third party claims' . . . and resulting liabilities and expenses which arise out of . . . such other party's ownership, use, misuse or operation of the Acquired Assets or Forest Products Business."  Id.

The Court finds that ARC-LLC may bring a claim of equitable indemnity as provided by California Code of Civil Procedure § 1021.6.[9]  The California Supreme Court has recognized that "a would-be indemnitee may be eligible to recover attorney fees under section 1021.6 even when . . . the indemnitee has been absolved of all liability for the plaintiff's injuries, so long as the indemnitee demonstrates it would have been entitled to indemnity for any judgment that had been rendered against it."  Bay Development, Ltd. v. Home Capital Corp., 50 Cal.3d 1012, 1027 (1990).

In order to recover for its indemnity claim, ARC-LLC must demonstrate that it was required to act due to the "tort of the indemnitor."  CCP § 1021.6(a).  On the current record, the Court cannot find

---

[9] CCP § 1021.6 states in relevant part: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by . . . defending an action by a third person and b) if that indemnitor was properly notified of the demand to . . . provide the defense and did not avail itself of the opportunity to do so, and c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity . . ."

United States District Court

For the Northern District of California

as a matter of law that Quebecor is liable for the harm alleged in plaintiff's complaint. Although ARC-LLC provides a series of facts that suggest Quebecor's liability, see motion at 9, the Court cannot find for ARC-LLC at this stage in the proceedings because it presents no evidence that Quebecor placed the hazardous materials that were found in 1998 in a disposal pit located on the Property. The hazardous materials found in the disposal pit are the foundation of plaintiff's claims, which do not involve other hazardous material disposals on other parcels of land held by various lumber companies. Therefore, the Court DENIES ARC-LLC's motion for summary judgment on its indemnity cross-claims against Quebecor.

**5.      Scheduling**

At the hearing on July 29, 2005 and again in its August 2, 2005 letter, Quebecor has requested that if the Court allows plaintiff to proceed on her Section 107 contribution claim, Quebecor be allowed to reopen discovery on such limited factual questions as may relate uniquely to that claim. Quebecor further requests leave to file a subsequent motion for summary judgment, directed solely at the Section 107 contribution claim. Both requests are GRANTED.

The parties are instructed to meet and confer to resolve what additional discovery, if any, is necessary; such additional discovery should be completed by August 31, 2005. Quebecor may file any further summary judgment motion on or before September 9, 2005. Plaintiff shall file her opposition by September 23, 2005, and defendant's reply shall be filed by September 30, 2005. Hearing on the motion shall be held on Tuesday, October 11, 2005 at 9:00 a.m.

The September 6, 2005 trial date is continued to Monday, November 21, 2005 at 8:30 a.m. The pretrial conference is continued to Tuesday, November 8, 2005 at 3:30 p.m.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby: GRANTS Simonson's motion for summary judgment [Docket # 81]; DENIES Quebecor's motion for summary judgment [Docket # 78]; GRANTS ARC-LLC's motion for summary judgment against plaintiff's claims [Docket # 82]; DENIES ARC-LLC's motion for summary judgment on its cross-claims against Quebecor

1  [Docket # 86]; and DISMISSES plaintiff's Second and Third Cause of Action with respect to all

2  defendants.

3

4      **IT IS SO ORDERED.**

5  Dated: August 4, 2005

6

7  _____

8                    SUSAN ILLSTON
                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California